2010-15-55 Next case is CHETS SHOES v. SIDNEY KASTNER 2010-15-55 My name is WALTER AIMS and I represent the appellant SIDNEY KASTNER. First of all, thank you very much for permitting me to collect myself. For some reason, as the years go by, the distance keeps getting longer and longer from the parking garage to the courthouse. This is an appeal from a grant of summary judgment of non-imprisonment by the U.S. District Court for the District of Vermont. So far as subject matter is concerned, it will be hard to find a simpler case. The invention is quite simply a shoe with a rubber sole, a rather resilient material, and metal studs projecting from it, from the bottom of the sole. The metal studs are anchored in the rubber such that they retract substantially to the plane of the sole. And that's the issue here, isn't it? Yes. The construction of the term retract. Yes. Now, the District Court, in effect, modified Claim 1. And Claim 1 says that the metal studs retract within the resilient sole until said tip of said stud is substantially at the plane of the bottom surface of the sole. The District Court interpreted that by inserting the words, in effect, that the retraction is to the immediately surrounding surface of the sole. And the District Court said that it was doing that in order to save the validity of the claim. That sounds fair enough. Now, what prior art was there that caused the District Court to have to save the claim? Before you go on to the prior art, even if the District Court erred with regard to the prior art's requirement of immediately surrounding in order to overcome it, why is it necessarily wrong in light of the specification? Why, from an objective standpoint, forget about the reason the District Court gave for incorporating the word immediately surrounding. Why is that construction wrong in light of the specification and the disclosures? Well, I don't think that the specification, first of all, sets forth a best mode. I don't see anything in the specification that limits it, limits the scope of the claim to retraction to the immediately surrounding part of the sole. Well, how else do you retract? That's what I don't understand retraction. I think of as coming up within, much the way the dictionary definition explains. And I don't know how you come up within and not be immediately surrounding. Well, it's my understanding that one of the accused structures, and there are several, has a rubber cleat that extends down or outwardly from the bottom of the sole. And that extends beyond the cleat that contains the metal stud. Well, then it wouldn't be substantially at the plane of the bottom surface of the sole, which is what the claim requires. Well, I think it would be the court, first of all, interpreted the claim that sole includes cleats and any rubber surface that protrudes from the flat portion of the sole. However, what the district court relied on in as its sole support for... So you're telling me the metal studs are mounted in the cleats, which are then mounted in the sole? The metal studs can either be mounted directly in the flat portion of the sole or in cleats, rubber cleats. Now, it's my understanding that perhaps in order to try to avoid the patent, the defendant used rubber cleats without metal studs and had them project downwardly, outwardly from the bottom of the sole, so that when the metal studs were retracted by the weight of the wearer, instead of going completely into the immediately surrounding portion of the sole, they couldn't because there were no unstudded cleats, pieces of rubber that extended downwardly. And so they extended beyond the plane of the studded cleats, such that you would then get the benefit of retractable metal studs. Don't you agree that there can only be one plane of a sole? The sole of a shoe can only have one plane. And so I'm troubled by your notion that the sole includes the cleats, because then what is the plane of the sole? Is it what I would think of as the plane of the sole, the bottom part of the shoe, or is it the plane where the cleat extends down to? Which wouldn't, in my mind, really be the plane of the sole so much as the plane of the tip of the cleat. Well, the District Court began by interpreting the term sole to mean the flat portion, or any cleats or projections that extended outwardly from that flat portion. So would the plane in your mind, in light of that construction, then be the flat portion, or would it be the plane that sort of magically connects the tip of every one of the cleats that protrudes? It would be the plane of the lowermost extending portion of the sole. If the sole has a ridge, it would be the plane at the end of the ridge. If the plane has non-studded cleats extending outwardly from it, then it would be the plane of those non-studded cleats. And that is the way that the lower court began to interpret the claim. Counselor, but the claim says that the studs retract within the sole, correct? Yes. So when it says that, it retracts within the cleat itself, but not the upper portion, not the flat, what we consider like the sole of my shoe, it just retracts within the cleat. There are two versions of it, and one certainly is, if you're using cleats, they retract within the cleats. If there are no cleats, if it's a flat bottom sole, then they retract within that flat bottom, substantially to the plane of whatever part of the sole extends outwardly the most. In most situations, the tip, the stud, retracts within, and that's the purpose of the invention. It's really what the invention is about. You have a metal stud that retracts within the sole. And that sole is, whether it's a cleat or the flat sole of the shoe. But the retraction has happened. And the district court found that the retraction occurred all the way to the flat surface of either the cleat or the sole. Well, the district court inserted in the claim that retraction is to the immediately surrounding portion of the sole. And that was why there was no infringement. Now, immediately surrounding is not in the claim. There is no prior art cited during prosecution, the Olson or Tamuro patents that would require that. That's the sense of the claim, isn't it? It retracts in relation to the immediately surrounding area. No, not immediately surrounding. If you take a non-studded cleat, any piece of rubber, and you extend it outwardly from the sole, then the retraction is going to be until the pin will begin to retract. But when you have an outwardly projection from the bottom of the sole, the pin can't retract any further. And it's my understanding that that perhaps is what was done here, although the court does make it difficult because it doesn't say what the accused structure is here. And there's more than one accused structure. Would you like to save some time for rebuttal? Yes, three minutes. Three minutes, all right. I didn't get the number. Continue as you wish, or I'll save all of it. No, I just emphasize that the district court, as Your Honor already has known, is that it relied on its personal knowledge of some kind of outdoor shoes. I don't know just what it meant, as its sole support for that interpretation of the immediately surrounding. And I don't know what art it is. I don't know whether it was prior or what it was prior to. I'm afraid I just... And it's never been explained to me by the accused infringer here, and I hope he'll do so in this argument. Claim one doesn't use the word cleat anywhere in it, does it? Claim one of the patent does not use the word cleat. I'm sorry? Claim one of the patent doesn't use the word cleat, does it? No, it says sole. But the court began, the lower court, by interpreting sole to mean a sole, a black portion with ridges, with cleats. I guess the reason I ask is because as I sat here and reread all of the columns of the patent to look for everywhere cleat is discussed, and everywhere it's discussed in this patent, it is clearly discussed as distinct from the sole. It's on column two of the patent, lines 55 to 60, and they talk about the plane of the cleat as opposed to the plane of the sole, of the shoe. And I guess what I'm wondering is is maybe there a problem with the notion that the sole includes the cleat. Because that's clearly, while the district court may have said that he gave it with one hand and took it away with the other because then he said it has to be within the immediately adjacent part. So I'm wondering if perhaps the problem is that the court may have wrongly concluded that the cleat was part of the sole. Yes, the court did that, and thereby it said that certain claims, later claims, that were directed to a cleat were redundant. So you believe that when the court said that the sole includes the cleat that perhaps it should not have done that in light of the specification that that may have been an error of claim construction? No, I think it's a reasonable interpretation, and it did render redundant later claims that specifically mentioned cleat. Well, I see claim 10 is a dependent claim that specifically mentions cleats, and so I was sort of wondering about that. I mean, is there anywhere in the specification that would give one reason to believe that the sole includes the cleat? Is there anything in the specification? Because I see several places where cleat and sole are distinguished, and the plane of the cleat and the plane of the sole are distinguished. Yes. I think I would just say the claim as a whole, and the district court began its analysis by saying that it was taking the term sole to mean not just a flat-bottomed sole, but a sole with ridges, cleats, or any other projections. And that's why I didn't push the later claims, which is specific to cleats. Thank you. This won't be your sole chance to argue. We'll save a minute for you for rebuttal. Thank you. Mr. Niles. Thank you, Your Honor. The interpretation advocated by Mr. Kastner on appeal is essentially that any metal stud in any Brazilian sole violates his patent. And that cannot be. He would not have been issued his patent if that were indeed the case. I brought with me the examples that were before the court, photographs of which are in the appendix, which show the cutout of how the stud is firmly embedded in the cleat. Is that part of the record? I'd like to see them. Yes, they are. I'm handing them off to the court assistant. Yes. For purposes of, I will hand up this note here. Miles. And if the court would like to see the others,  These exhibits appear in the appendix at A123 through A126, and I believe A203. The issue with claim construction on appeal, I think is really a result of Kastner's own advocacy below the trial court that the term cleat should be included in the definition of sole. And as a result, I do not see the term immediately surrounding it having any real consequence relative to what the claim requires as far as retraction. Our position is that these metal studs do not retract at all, and that this court could fully affirm the district court's ruling simply by finding that there is not sufficient evidence of retraction, namely moving in or out within the sole without even going so far as to then issue an interpretation of the following qualifier. Mr. Ames himself, while advocating that that term should not be included in the construction, in a letter to us, which is found in our brief at page 11, starting on page 10, described the patent as where the weight of the wearer, this is a December 2006 letter, where the weight of the wearer causes the studs to retract to the plane of the sole, and those portions of the sole surrounding the studs, whether they be rubber cleats or the sole proper, contact the surface and provide the necessary traction. In the court below, we argued that the term cleat is separately defined in the patent, and that the term bottom surface of the sole is also separately defined. And the specific definition is being attached to the bottom surface of the sole. So one of the positions in claim construction that we had was that there could not be an infringement of claim one because the metal studs are embedded into the cleats and there is no physical way that those studs then could be pushed all the way to the surface of the sole. Claim 12, in contrast, talks about the stud being substantially at the plane of the lower surface of the sole. And if you look at that particular element where the element at issue, you would say there's a distinction between claim one, which talks about retracting into the sole, and claim 12, which talks about the plane of the cleat. Yes, our position below was that claim one dealt with soles without cleats and that claim 12 dealt with soles with cleats. If you look at claim 12, it's a second resilient material and the outsoles of these particular pieces of footwear are made of a single resilient material which both parties admitted going into the district court and thus there's no appeal by Mr. Kastner of the rejection of his claim that the shoes infringe claim 12 of the 283 patent. The record below on claim construction with respect to what was represented to obtain this patent further supports the idea that retraction is truly required. With respect to the Olson patent, the office action that was dealt with, Mr. Kastner's response was that the tips of the spikes are forced back into the sole. Into the sole is very dispositive here. Moreover, in the Tamero patent, which was a situation where the metal stakes or the metal studs rested in a non-protruded fashion and then the weight of the wearer would cause those to actually slide out and provide traction. In response to the rejection, Mr. Kastner said that this is the precise opposite way of the way our invention functions. So it's clear that those metal studs in order to obtain the patent, Mr. Kastner represented that they would have to move in or move out. Even if the court were to rule in Mr. Kastner's favor on claim construction, there is little or no evidence of retraction in any sense of the word. The parties agreed on the dictionary definition and what has been shown at best as recited by the district court and is presented here on appeal is essentially one ambiguous paper print smudge which was presented on a motion for reconsideration. The first accusation by Mr. Kastner of infringement was made in 2006 and despite years and years and years of ability to look at tests and present evidence, he did not come forward with that evidence. Although the issue of weight of the wearer is not before this court, the record reflects that our testing shows that these outsoles require 246 pounds of pressure per stud to retract to the base of the sole and when you multiply that times the 20 studs in the outsoles, you can see that there just is not retraction. So unless there is any further questions, that's all I have, Your Honors. Thank you, Mr. Niles. Mr. Ames, we'll give you two minutes to rebut if you need it.  Your Honor's attention to A16. That's on the original decision and the court after saying after saying that Kastner argues that the term sole of claim one should be read to encompass cleats. The court then agrees with that interpretation and says that the corresponding and the specification states that these figures show a modified embodiment of the sole and it goes on and says that the specification suggests the term sole can include whatever form black treaded or cleated. The piece of rubber on the bottom of a shoe may take. The language of the specification supports this idea in other places as well. This is on page 16 of the court's decision. Now, that's where I began. If we take that away, then I've got to go to claim 12 or some other claim that specifically says cleats. But here the court was interpreting sole to include cleats. As far as Olson and Tumoro are concerned, two patents that were cited and relied on during prosecution of the application. They couldn't be more different. Olson's has what he calls a stub STUB that holds the metal stud in fixed position. And in Tumoro the metal studs are firmly fixed perhaps by welding to the bottom of the base of the sole. It is amazing that with a simplicity of retractable metal cleat that validity is not even an issue here. Thank you, Mr. Rames. I thank your Honor very much. We'll take the case under advisement. You don't need these. No, I'm good.